UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DEBORAH L. MADDOCKS, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | No. 1:11-cv-461-NT |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge wrongly reversed a previous finding on an agreed remand from this court, wrongly failed to find that several of her claimed impairments were severe, and assigned her a mental residual functional capacity ("RFC") that is not supported by substantial evidence. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from major depressive disorder and personality disorder NOS (not otherwise specified), impairments that were severe but which, considered separately or in combination, did not meet or medically equal

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 12, 2012, pursuant to Local Rule 16.3(a)(2)C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 21-23; that she retained the physical RFC to perform work at all exertional levels, but with the following nonexertional limitations: she could understand and remember simple to moderately complex instructions, could execute simple to moderately complex tasks on a consistent schedule to complete a normal workday and week, could interact occasionally with coworkers and the general public, could tolerate normal supervision that did not involve direct, intrusive criticism; could work in public areas, and could adapt to occasional routine changes in the workplace, Finding 5, *id.* at 24; that she was unable to perform any past relevant work, Finding 6, *id.* at 29; that, given her age (51 on the alleged date of onset of disability, an individual closely approaching advanced age), at least high school education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.*; and that, as a result, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from August 3, 2006, the alleged date of onset of disability, through the date of the decision, August 9, 2011, Finding 11, *id.* at 30. The Appeals Council declined to review the decision, *id.* at 1-4, making it the final determination of the commissioner. 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Procedural Issue

This case was remanded by this court on December 16, 2009, for further proceedings, at the request of the commissioner and with the agreement of counsel for the plaintiff. The parties agreed on the following language in the order of remand:

> [U]pon remand, the ALJ will be directed to: update the medical evidence of record; further evaluate the plaintiff's mental impairments; further evaluate the plaintiff's residual functional capacity; and obtain medical expert and vocational expert evidence, if warranted.

Order (ECF No. 8-4) at 1.

The plaintiff first contends, Statement of Specific Errors ("Itemized Statement") (ECF No. 11) at 3-6, that the administrative law judge violated the doctrine of law of the case and the rule of mandate by finding that she had no severe physical impairments, when the same administrative law judge found in his first decision on her claim that she suffered from three severe physical impairments: trochanteric bursitis, degenerative disc disease, and cardiomegaly. Decision [dated May 15, 2009] (ECF No. 8-4) at 3 (Record at 201). The administrative law judge neither noted nor explained this change.

The plaintiff correctly points out, *id.*, that other courts have adopted the doctrines of law of the case and the rule of mandate in Social Security cases. *E.g., Almarez v. Astrue*, No. EDCV 09-00140-MAN, 2010 WL 3894646, at *3-*6 (C.D. Cal. Sept. 30, 2010) (citing cases); *Calderson v. Astrue*, 683 F.Supp.2d 273, 276-77 (E.D.N.Y. 2010). This court has not done so yet. *See Pelletier v. Social Sec. Admin. Comm'r*, 1:10-cv-00438-DBH, 2011 U.S.Dist.LEXIS 10931, at *20 (D. Me. Sept. 23, 2011) (as amended 10/4/11); *Bowring v. Social Sec. Admin. Comm'r*, No. 1:09-cv-00573-JAW, 2011 WL 5190789, at *3 n.1 (D. Me. Oct. 28, 2011).

However, I agree with Magistrate Judge Kravchuk of this court that, in most cases in which a Social Security claim is remanded, "[i]t would be an exceptional development for the Commissioner to revisit . . . favorable disability findings when further proceedings have been directed exclusively for consideration of whether an earlier application should have been reopened. After all, this court's 'mandate' touches only on that narrow question." *Bowring*, 2011 WL 5190789 at *2. "[I]n the absence of some evidence of . . . prior false statements, or other persuasive evidence that the administrative law judge labored under a basic misconception of the evidence, it would be inappropriate to disturb prior administrative findings that have never been challenged." *Id.*

Further, Judge Kravchuk observed that the doctrines of law of the case and the rule of mandate "are not straight jackets. . . . Even in the context of legal conclusions, for example, law of the case does not limit a tribunal's power but guides its exercise of discretion. An appellate mandate, similarly, does not require de novo proceedings on remand unless that is necessarily inferred from the disposition on appeal." *Id*. at *3 n.1 (citations and internal punctuation omitted).

Here, the court's order of remand directed the defendant, *inter alia*, to update the medical evidence and to further evaluate the plaintiff's RFC. The subsequent order of the Decision Review Board transferring the case back to the administrative law judge directed him to, *inter alia*, obtain additional medical evidence, to include, if warranted, a consultative examination and "medical source statements about what the claimant can still do despite the impairments[,]" and evidence from a medical expert; to give "further consideration to the claimant's maximum residual functional capacity" and to "articulate the claimant's exertional and non-exertional limitations"; to "[f]urther evaluate the claimant's subjective complaints regarding her physical . . . impairments." Record at 221.

The administrative law judge did obtain updated medical records and took the testimony of a medical expert, as noted in his opinion. Record at 22 (records dated after May 15, 2009, the date of the first opinion, and testimony of Dr. Webber). Both actions appear to me to be within the scope of the order of remand and certainly within the scope of the Appeals Council's order to the administrative law judge. *See generally Calderon v.* Astrue, 683 F.Supp.2d 273, 277 (E.D. N.Y. 2010). It is the administrative law judge's next step that the plaintiff challenges – his conclusion that the plaintiff's "physical problems have been intermittent, with none lasting at least 12 months[,]" *id*. at 22, presumably leading him to find that none of her alleged physical

impairments was severe.  *See* 20 C.F.R. § 404.1509 (impairment must have lasted or be expected to last for continuous period of at least 12 months).  He also asserts that "Acadia records dated March 2011 show that the claimant had not had any significant health concerns during the past year." *Id*.

Assuming *arguendo* that the administrative law judge could reverse an earlier claimant-favorable finding on remand based on new evidence, he, nonetheless, committed reversible error in this case.  The only new evidence concerning physical impairments upon which the administrative law judge relied in his second opinion was the testimony of Dr. Webber, the medical expert, and the "Acadia records" in Exhibit 35F.  *Id*.[2]

The "Acadia records" are records of mental health treatment at a specialized facility, not a medical hospital.  Record at 1071-78.  The administrative law judge apparently is referring to an entry by a psychiatric nurse practitioner on Mary 21, 2011, under the heading "Medical/Historical Data Update" that the plaintiff "states she has not had any significant health concerns during the past treatment year." *Id*. at 1074.  On that same page, however, the nurse practitioner recorded "a number of chronic health concerns[,]" and that "she has been trying for 4 years to get Social Security Disability[.]" *Id*. at 1074, 1073.   What is "significant" for an individual with chronic physical problems may be very different from what is "significant" for a healthy individual.  This is not enough to justify a rejection of the administrative law judge's earlier determination that the plaintiff suffered from three severe physical impairments.  *Id*. at 201.

In addition, the administrative law judge has misinterpreted the duration requirement imposed by regulation.  With respect to the bilateral trochanteric bursitis, for example, Dr.

---

[2] At oral argument, the attorney for the commissioner agreed that only Dr. Webber's testimony "brought about the change" in the administrative law judge's conclusions about the plaintiff's physical RFC.

Webber testified that he "would guess" that this ailment "was intermittent" after the treatment the plaintiff received for it in 2007. *Id*. at 144. Any date in 2007 was more than 12 months prior to the date of the administrative law judge's decision (August 9, 2011). Dr. Webber also said that "the trochanteric bursitis, because of a recurrent nature, would come and go. But it's unclear from any notes that there was an ongoing persistent, steady, steady, steady problem with it." *Id*. at 146. "I think sporadically she could have some problems with her trochanteric bursitis and combined with some back pain would take her out of heavy type work and medium type work certainly." *Id*. Finally, in response to the administrative law judge's question, "And you indicated that the symptoms of the condition simply were intermittent rather than any symptoms greater than 12 months would have posed a limitation for 12 months or more?" Dr. Webber said, "I tend to think that way because I just don't see a consistency in referrals and types of care that implied very severe problems which required ongoing care during this time frame." *Id*. at 146-47.

> As this court has said, in cases of impairments that wax and wane in intensity:
>
>> A condition need not be "severe" or symptomatic day in and day out for twelve straight months to meet the durational requirement. Rather, as the Supreme Court . . . observed in *Barnhart v. Walton*, 122 S.Ct. 1265, 1270 (2002), a claimant must show both that his or her impairment has lasted (or is expected to last) for twelve months and, ultimately (for purpose of being found disabled and hence entitled to benefits), that it is severe enough to prevent him or her from engaging in substantial gainful activity for at least twelve months.

*Greene v. Barnhart*, No. 03-36-B-W, 2003 WL 2291199, at *4 (D. Me. Dec. 15, 2003).[3]

---

[3] *See Dewald v. Astrue*. 590 F.Supp.2d 1184, 1203 (D.S.D. 2008): "There is no evidence of record that [the plaintiff's] trochanteric bursitis was a temporary condition and a cursory review of medical resources reveals that the condition can be chronic in older women. In [the plaintiff's] case, it is not more or less speculative to say that her bursitis was a temporary, short-term condition than it is to say that the bursitis was chronic in nature and wholly consistent with the pain she reported having in her hip area and elsewhere, for several years." (Citations omitted.)

7

Here, the administrative law judge merely observed that "Dr. Webber testified that the claimant's physical problems have been intermittent, with none lasting at least 12 months." Record at 22. This is not an accurate recitation of Dr. Webber's testimony. In particular, Dr. Webber testified that the bilateral trochanteric bursitis, combined with the plaintiff's back pain, "take her out of heavy type work and medium type work certainly." Yet, the administrative law judge concluded that the plaintiff could perform "a full range of work at all exertional levels." *Id*. at 24. This conclusion is neither consistent with his physical findings after the initial hearing nor with any additional medical evidence available to him after remand.[4] The error is fatal, as there should have been some physical limitations included in the plaintiff's RFC. Remand is therefore indicated, for a second time.[5]

This result makes it unnecessary to consider the plaintiff's second asserted ground for remand, Itemized Statement at 6-9, that the administrative law judge's conclusion that the plaintiff suffered from no physical impairments is not supported by substantial evidence, and her third ground, that the administrative law judge erred in finding that her physical impairments did not meet the durational requirements of the applicable regulations, *id*. at 10-13.

I will address the plaintiff's two remaining grounds for remand, for the benefit of the parties on remand, or should the court disagree with my recommended decision on the first three grounds advanced by the plaintiff.

### B. Personality Disorder

To the extent that I can understand it, the plaintiff's next argument is that the administrative law judge wrongly discounted her credibility in terms of her testimony about the

---

[4] In addition, the two jobs identified by the vocational expert as available for the plaintiff, and included as such in the administrative law judge's opinion, Record at 30, have exertion levels inconsistent with Dr. Webber's testimony, yet the opinion fails to mention the testimony, let alone the inconsistency.
[5] The administrative law judge fails to mention any new evidence concerning the cardiomegaly that he found to be a severe impairment in his first opinion, let alone why it has disappeared in his second opinion. This is another reason for remand.

degree of dysfunction caused by her mental impairments. Itemized Statement at 13-19. However, it is not evident how she contends that a proper evaluation of this testimony would have resulted in a different, more favorable outcome on her claim.

The plaintiff presents a three-page chart of instances that she contends show that "certain references made by the ALJ do not accurately reflect the contents of the record." *Id*. at 15-17. In several of those instances, the portions of the record quoted by the plaintiff are not in fact inconsistent with the quoted excerpt from the administrative law judge's opinion. In none of the listed instances does comparison of the two quoted passages in fact establish that the administrative law judge's statements are inaccurate.

The plaintiff asserts, in conclusory fashion, that the administrative law judge did not comply with the Decision Review Board's "directive for resolution of the apparent inconsistencies between the ALJ's findings regarding mental impairments and conflicting evidence." *Id*. at 18. Contrary to the plaintiff's claim, the three-page chart does not "reveal[] that the second decision neither addressed nor resolved these conflicts." *Id*. The Decision Review Board's order of remand first sets out the Board's finding, contrary to that of the administrative law judge following the first hearing, that the plaintiff suffered from "a severe mental impairment." Record at 221. It directed the administrative law judge to evaluate the plaintiff's subjective complaints and the testimony of lay witnesses. *Id*. It did *not* direct the administrative law judge to "resol[ve] the apparent inconsistencies between the ALJ's [initial] findings regarding mental impairments and conflicting evidence." The plaintiff's argument is based upon a condition that does not exist.

The plaintiff takes nothing by this argument.

9

### C. Mental RFC

The plaintiff's final allegation of error is an assertion that the mental RFC found by the administrative law judge is not supported by substantial evidence. Itemized Statement at 19-21. Specifically, she complains that the administrative law judge relied on the opinion of a state-agency psychologist that was formulated in May 2007, four years prior to the second hearing, without the benefit of "a significant number of mental health treatment records" from 2008 through 2010. *Id*. at 19-20. She asserts that "[t]he passage of time and the significant medical treatment that took place following the May 2007 opinion calls into question the viability of the opinion." Id. at 20-21.

That conclusory statement is not enough. The plaintiff correctly cites *Eaton v. Astrue*, No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008), for the proposition that a state-agency reviewer's report cannot stand alone as substantial evidence in support of an administrative law judge's opinion "when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question[,]" but it is not enough to say "there is material new evidence" and, therefore, the expert's conclusions have been called into question.

Here, the only specific difference that the plaintiff demonstrates is that the state-agency psychologist's observations that the plaintiff "writes a church bulletin" and "goes to church" were no longer accurate as of the time of the second opinion. Itemized Statement at 20.[6] What is missing from the itemized statement, and the oral argument of the plaintiff's attorney, is any suggestion as to how this change in circumstances would necessarily have resulted in a more restricted mental RFC, thereby rendering the change more than a harmless one.

---

[6] The administrative law judge noted these changes in the narrative portion of his opinion. Record at 25. The administrative law judge did reject the report of the plaintiff's former pastor "to the extent that [it denies] the claimant can function within the restrictions described in the residual functional capacity assessment[,]" and gave supported reasons for doing so. *Id*. at 28-29. Nothing further is required.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge